IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LINDA D. OUTLAW, | ) CIVIL NO. 09-00620 JMS/BMK |
| | ) |
| Plaintiff, | ) ORDER GRANTING |
| | ) DEFENDANT'S MOTION FOR |
| vs. | ) SUMMARY JUDGMENT |
| | ) |
| UNITED AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| _____ | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff Linda D. Outlaw ("Plaintiff"), a former Reservations Service and Sales Representative ("RSSR") for Defendant United Airlines ("Defendant" or "UAL"), asserts claims against Defendant for hostile work environment, adverse actions, and wrongful termination due to race and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

Currently before the court is Defendant's Motion for Summary Judgment, in which Defendant argues that Plaintiff has failed to establish a genuine issue of material fact in support of her claims. For the following reasons, the court GRANTS Defendant's Motion for Summary Judgment.

## II. BACKGROUND

**A.      Factual Background**

On March 9, 1998, Plaintiff began working for Defendant as a RSSR, taking calls from customers who wished to book or make changes to flight reservations. *See* Doc. No. 49-1, Freeman Decl. ¶¶ 2-3. On October 2006, Plaintiff transferred to Honolulu, where her supervisor was Robert Freeman, Jr. ("Freeman"). *Id.* ¶ 4.

As an RSSR, Plaintiff was covered by a collective bargaining agreement between Defendant and the International Association of Machinists and Aerospace Workers ("IAM"), which provided a multi-step grievance process, including: (1) discussions with the employee's supervisor; (2) discussions with the employee's department head, and if needed, an Investigative Review Hearing; (3) review by a human resources representative and, if needed, a "Step 3" hearing; and (4) an arbitration hearing before the System Board comprised of an IAM member, a UAL member, and a neutral member. *Id.* ¶ 5; Doc. No. 49-2, Def.'s Ex. 1. Plaintiff was also covered by the Rules of Conduct for IAM employees, which discusses suggested levels of discipline for specific infractions (from Level 1 through Level 5 (termination)). Doc. No. 49-1, Freeman Decl. ¶ 6; Doc. No. 49-3, Def.'s Ex. 2.

Starting in November 2006, Freeman received numerous complaints from customers and Plaintiff's co-workers about Plaintiff's performance and attitude. *See* Doc. No. 49-1, Freeman Decl. ¶ 8. In response, Freeman held conferences with Plaintiff and sent her to "coaching" sessions. *Id.* In May 2007, Freeman received a customer complaint describing Plaintiff as "condescending with attitude. " *Id.* ¶ 9. As a result, Freeman issued a Level 1 discipline to Plaintiff for unacceptable job performance and engaging in conduct detrimental to UAL, and also placed Plaintiff on 100% call monitoring status, where all of her calls were recorded. *Id.* ¶¶ 9-10; Doc. No. 49-4, Def.'s Ex. 3. With that said, however, Plaintiff also received numerous customer praises and apparently did well with coaching. *See* Doc. Nos. 55-2, 55-7, 59-2 (Plaintiff's attachments).[1]

Plaintiff's schedule adherence and productivity also became an issue. Specifically, RSSR employees log in and out of a computer system to keep track of the time spent on particular activities, and Plaintiff frequently scored below minimum expectations. Doc. No. 49-1, Freeman Decl. ¶¶ 12-13. In April 2008, Labor and Performance Supervisor Ann Forsyth ("Forsyth") investigated Plaintiff's schedule adherence and found (as Plaintiff admitted) that she was

---

[1] Although Plaintiff attaches numerous pages to her various filings, nowhere does Plaintiff either authenticate the documents and/or explain their relevance. Giving this pro se Plaintiff every benefit, the court tries to glean what it can from the exhibits.

falisfying her time -- Plaintiff would arrive at work, park in an improper area, enter the office and sign on to the phone system using a false code to indicate she was doing administrative work, and then leave to re-park her car. Doc. No. 49-7, Forsyth Decl. ¶ 3. Forsyth further found that Plaintiff took unacceptably long lunch and other breaks. *Id.* As a result, Forsyth determined that Plaintiff violated several Rules of Conduct and proposed a Level 4 disciplinary action. *Id.*; Doc. No. 49-5, Def.'s Ex. 4. On May 19, 2008, a Hearing Officer subsequently issued a Level 4 discipline to Plaintiff. Doc. No. 49-7, Forsyth Decl. ¶ 4.

In the meantime, Freeman became aware of two customer calls in which he believed Plaintiff acted inappropriately. On May 30, 2008, Freeman received a May 12, 2008 customer complaint describing Plaintiff as the "rudest person [she had] talked to," "obnoxious," and "condescending." Doc. No. 49-1, Freeman Decl. ¶ 15, Doc. No. 49-6, Def.'s Ex. 5. From Freeman's review of the audio and visual (what was on Plaintiff's computer screen) recording of the call, Freeman found that Plaintiff failed to take responsibility for a scheduling error, failed to apologize on behalf of UAL, failed to transfer the customer to a supervisor as requested (nine times), and unnecessarily placed the customer on hold for minutes at a time. Doc. No. 49-1, Freeman Decl. ¶ 16; *see also id.* ¶¶ 17-18 (providing portions of Plaintiff's statements to the customer). For example,

when Plaintiff placed the customer on hold the first time, she told the customer "maybe by the time I come back [to this call] . . . your attitude will be a little different." *Id.* ¶ 17. Plaintiff also told the customer:

> Okay so give me a moment and I'm going to place you on hold okay and maybe by the time I come back while I'm looking for something . . . your attitude will be a little bit different okay so hold on.
> . . .
> Now that I, I didn't have the opportunity just to let you know. So you know. I didn't get an opportunity to even look for anything. [Y]ou know you just started you know going off on my phone which doesn't have to happen.
> . . .
> No you give me your name. [M]a'am okay go ahead and scream you can go ahead and get it out, go ahead, go ahead.

*Id.* ¶ 18.

In the second phone call in which Freeman found that Plaintiff acted inappropriately, the customer described Plaintiff as the "most uncooperative person I've ever met and talked with." *Id.* ¶ 20. According to Freeman, Plaintiff interrupted the customer multiple times, misinformed the customer about the available flights, refused to answer a question, and told the customer that he had to answer her question instead of asking her questions. *Id.*; *see also* Doc. No. 49-21, Def.'s Ex. 15, at 120-21. Freeman reported these calls to Forsyth. Doc. No. 49-1, Freeman Decl. ¶ 21.

During this time, Forsyth was also notified about an April 19, 2008 incident between Plaintiff and a UAL customer service agent, Genevieve Rymut ("Rymut"), at Chicago O'Hare International Airport while Plaintiff was traveling on pass privileges (*i.e.*, traveling on a space-available basis and not guaranteed a particular seat). *Id.* ¶ 22; Doc. No. 49-7, Forsyth Decl. ¶ 6. According to Rymut, Plaintiff interrupted Rymut while she was assisting a customer to complain about the seat she was assigned. Doc. No. 49-8, Def.'s Ex. 6. Plaintiff then allegedly refused to board the plane without a better seat, and demanded to see Rymut's supervisor. When Rymut started to close the plane door as instructed by her supervisor, Plaintiff attempted to physically stop Rymut from closing the door. *Id.* In contrast, although Plaintiff's version of events is not clear, Plaintiff submitted a statement that Rymut did not acknowledge her presence and was otherwise rude to her by not assisting Plaintiff with a seat change and slamming the plane door to prevent Plaintiff from boarding. Doc. No. 49-9, Def.'s Ex. 7.[2] Forsyth received written statements from Rymut, Rymut's supervisor Elizabeth Root, a UAL employee who was nearby during the incident, Rob Taylor, and Plaintiff. From her review, Forsyth credited Rymut's account over Plaintiff's. Doc. No. 49-7, Forsyth

---

[2] Because Plaintiff submitted no admissible evidence explaining her version of events (such as a declaration), the court bases Plaintiff's version of events on what she provided Forsyth.

Decl. ¶ 6.

As a result of Plaintiff's two customer calls and her interaction with Rymut, Forsyth proposed a Level 5 discipline (discharge). *Id.* ¶ 11. After an Investigative Review Hearing ("IRH") in which UAL representatives as well as Plaintiff and her IAM representative were allowed to present evidence, the IRH Officer determined that Plaintiff should be terminated effective July 23, 2008. *Id.* ¶ 12; Doc. No. 49-13, Erwin Decl. ¶ 4. Plaintiff and the IAM grieved the termination decision up to a Step 3 hearing, which was held before a Labor Relations Representative who was not part of the underlying process. Doc. No. 49-13, Erwin Decl. ¶¶ 6-7. Again, Plaintiff was represented by the IAM and given the opportunity to tell her side of the story. *Id.* ¶ 8. Ultimately, the decision to discharge Plaintiff was upheld. *Id.* ¶ 9.

On October 22, 2008, Plaintiff filed with the Hawaii Civil Rights Commission ("HCRC") and the Equal Employment Opportunity Commission ("EEOC") a discrimination charge on the basis of race and disability. Doc. No. 49-19, Def.'s Ex. 13. The HCRC and EEOC dismissed the discrimination charge, and Plaintiff was issued a right-to-sue letter. *See* Compl. Ex. 6; Doc. No. 49-20, Def.'s Ex. 20.

**B.    Procedural Background**

On December 31, 2009, Plaintiff filed her Complaint alleging claims against Defendant and Freeman for discrimination on the basis of "race or color." On May 21, 2010, the court dismissed Plaintiff's claims against Freeman. Doc. No. 27.

On December 22, 2010, Defendant filed its Motion for Summary Judgment. Plaintiff filed her Opposition on February 24, 2011, filed additional exhibits February 28, 2011, and filed a "Supplemental Amendment" on March 3, 2011. Defendant filed a Reply on March 7, 2011. Pursuant to Local Rule 7.2(d), the court determines Defendant's Motion for Summary Judgment without a hearing.

### III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor." (citations omitted)).

## IV. ANALYSIS

To properly address Defendant's Motion for Summary Judgment, the court must first start by defining Plaintiff's claims against Defendant.

Plaintiff is appearing pro se; consequently, the court liberally construes her pleadings. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Complaint asserts that Plaintiff was treated differently and wrongfully terminated on the basis of her "race or color." Compl. ¶¶ 2-3. Attached to the Complaint, however, are various Exhibits -- including hand-written notes apparently taken around the time of some of the incidents leading to her discipline and termination, a letter regarding suspension of her medical benefits, a Hawaii State Department of Labor and Industrial Relations decision reversing the determination that Plaintiff was discharged for misconduct, and a HCRC letter discharging her discrimination claim. Compl. Exs. 1-6.

Construing the Complaint liberally, the court finds that Plaintiff arguably states claims against Defendant for hostile work environment, adverse actions, and wrongful termination on the basis of color or race.

Thus, although Plaintiff's Opposition to Defendant's Motion for Summary Judgment asserts that this action also includes claims for breach of contract and discrimination on the basis of disability and (possibly) accent, *see* Doc. No. 55 at 1-2, Plaintiff's claims are limited by what is asserted in the Complaint, even when read broadly. The court therefore proceeds to address Defendant's arguments as they relate to Plaintiff's claims for hostile work environment, adverse actions, and termination on the basis of race and color.

## A. Plaintiff's Claims for Adverse Actions Taken Against Her and Wrongful Termination

Defendant argues, among other things, that summary judgment should be granted on Plaintiff's claims based on adverse actions and/or wrongful termination because Plaintiff cannot establish a prima facie case to support these claims and there is no evidence of pretext.[3] The court first outlines the relevant

---

[3] Defendant also argues that (1) Plaintiff's claims of discrimination based on color are barred as unexhausted, and (2) Plaintiff's claims for any adverse actions that occurred prior to December 27, 2007 are barred by the statute of limitations. As to Defendant's first argument, Plaintiff's claims for discrimination on the basis of race are reasonably related to her claims for discrimination based on color such that Plaintiff's failure to specifically assert color-based discrimination does not bar her claim here. *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091,

(continued...)

framework, and then addresses Defendant's arguments.

### 1. Framework for Employment Discrimination Claims on Summary Judgment

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides a "useful tool at the summary judgment stage" in addressing Title VII claims. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004). Under this framework, Plaintiff has the initial burden to establish a prima facie case of discrimination. *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (citation and quotation omitted). A prima facie case under *McDonnell Douglas* requires a plaintiff to offer proof that: (1) she belongs to a protected class; (2) she performed his job adequately or satisfactorily; (3) she suffered an adverse employment action such as termination, demotion, etc.; and (4) other similarly situated employees who do not belong to the same protected class were treated differently. *McDonnell Douglas*, 411 U.S. at 802; *see Cornwell v. Electra Cent.*

---

[3](...continued)
1100 (9th Cir. 2002) ("Allegations of discrimination not included in the administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." (quotations omitted)). Because the court's analysis applies equally regardless of whether Plaintiff's claims are framed as raising race or color discrimination, the court's analysis below applies equally to either claim.

As to Defendant's second argument, the court agrees that 42 U.S.C. § 2000e-5(e)(1) bars Plaintiff's claims to the extent based on conduct that occurred more than 300 days prior the filing of her discrimination charge with the EEOC and HCRC on October 22, 2008. *See also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 (2002). These untimely discrete acts, however, "still may be considered for purposes of placing non-discrete acts in the proper context." *Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 893 n.4 (9th Cir. 2005).

*Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006); *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007).

"The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997) (citation omitted). If Plaintiff puts forth her prima facie claim, the burden then shifts to Defendant to put forward a legitimate, non-discriminatory reason for its actions. If Defendant proffers such a reason, the burden shifts back to Plaintiff to show that Defendant's reason is actually a pretext for discrimination. *Boeing Co.*, 577 F.3d at 1049 (citation and quotation omitted).

"[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage." *Hawn v. Exec. Jet Mgmt, Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). That is, circumstantial evidence of pretext must be specific and substantial, *see Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1163 (9th Cir. 2009), and a plaintiff must do more than merely deny the credibility of the defendant's proffered reason. *See Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986). "A plaintiff can show pretext directly, by showing that discrimination [or retaliation] more likely motivated the employer, or indirectly, by showing that

13

the employer's explanation is unworthy of credence." *Vasquez v. Cnty. of Los Angeles.*, 349 F.3d 634, 641 (9th Cir. 2003); *see also Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory [or retaliatory] statements or actions by the employer." *Coghlan*, 349 F.3d at 1095. Circumstantial evidence requires an additional inferential step to demonstrate discrimination. *Id.*

Despite this "useful tool" of the *McDonnell Douglas* framework, there is nothing that "compels the parties to invoke the *McDonnell Douglas* presumption." *McGinest*, 360 F.3d at 1122. "When responding to a summary judgment motion . . . [the plaintiff] may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the employer]." *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007) (quoting *McGinest*, 360 F.3d at 1122). If the plaintiff submits direct or circumstantial evidence, "a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id*. (quoting *Godwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1221 (9th Cir. 1998)).

///

///

## 2.    *Application*

Defendant relies on the *McDonnell Douglas* framework in its Motion for Summary Judgment, and Plaintiff did not present any direct or circumstantial evidence demonstrating discrimination.  Accordingly, the court employs the *McDonnell Douglas* framework in addressing Plaintiff's claims.

### a.    *Whether other similarly situated employees who do not belong to the same protected class were treated differently*

Defendant argues, and the court agrees, that Plaintiff has not established the fourth element of her prima facie case for adverse actions and/or wrongful termination.  There is simply no evidence that Defendant treated similarly-situated individuals outside of Plaintiff's protected group more favorably -- the evidence presented establishes that Defendant treats customer complaints and violations of pass travel rules seriously, *see* Doc. No. 49-1, Freeman Decl. ¶ 30; Doc. No. 49-16, Peterson Decl. ¶ 3; Doc. No. 49-7, Forsyth Decl. ¶ 13; Doc. No. 49-13, Erwin Decl. ¶ 12, and there is no evidence that any other employees with similar records were treated better than Plaintiff.  Indeed, Plaintiff (1) admitted that Freeman has a "history" of "threatening" both African-American and non-African-American employees with disciplinary steps.  Doc. No. 49-21, Def.'s Ex. 15 at 36-37, (2) admitted that she has no knowledge of whether other employees were disciplined for poor work performance, *id.* at 34, 63, 110-11, and

(3) acknowledges that Freeman legitimately believed that Plaintiff had acted inappropriately on one of her customer calls and while traveling on travel privileges.[4]  *Id.* at 120, 122, 124; *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (explaining that courts "only require that the employer honestly believed its reason for its action, even if its reason is foolish or trivial or even baseless" (quotations omitted)).  In sum, the evidence presented establishes that Freeman counsels and disciplines employees for performance issues without regard to the employees' race.  Doc. No. 49-1, Freeman Decl. ¶¶ 31-33.

In opposition, Plaintiff has failed to come forward with any evidence that disputes the court's conclusions -- Plaintiff fails to present *any* evidence of how Defendant treats other similarly situated employees who are not African-American.  Instead, the court is left with Plaintiff's mere allegations that non-African Americans were "never investigated" for schedule adherence and have not "encountered the same situations that Plaintiff is being accused of [a]nd was not

---

[4]  The attachments to the Complaint also assert that Plaintiff was denied a "floorwalker position" and was denied transfer to another supervisor.  *See* Compl. Exs. 1 at 3, 3 at 2.  Plaintiff has presented no evidence to support these allegations, much less any evidence that similarly situated employees were treated better than Plaintiff in these regards.  Rather, the evidence presented establishes that these actions do not support Plaintiff's prima facie case.  *See* Doc. No. 49-17, Shook Decl. ¶¶ 4-5 (explaining the Defendant does not honor requests for transfers to a different supervisor because supervisors are determined by shifts, which are assigned based on priority); Doc. No. 49-16, Peterson Decl. ¶ 2 (explaining that the one employee Plaintiff believed was given a floorwalker position did not have a disciplinary record).

disciplined or terminated during this time period."  Pl.'s Opp'n at 4-5.  These mere

unsupported and conclusory allegations, however, are not evidence and are

insufficient to carry Plaintiff's summary judgment burden of establishing a prima

facie case of adverse actions and/or termination on the basis of race.  *See Thornton*

*v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (holding that

"conclusory statements of bias do not carry the nonmoving party's burden in

opposition to a motion for summary judgment"); *Lucas v. Chicago Transit Auth.*,

367 F.3d 714, 726 (7th Cir. 2004) (holding "that conclusory statements [regarding

similarly situated employees], not grounded in specific facts, are not sufficient to

avoid summary judgment"); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir.

1993) ("When the nonmoving party relies only on its own affidavits to oppose

summary judgment, it cannot rely on conclusory allegations unsupported by factual

data to create an issue of material fact."); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840

F.2d 1409, 1419 (9th Cir. 1988) ("[P]urely conclusory allegations of alleged

discrimination, with no concrete, relevant particulars, will not bar summary

judgment.").

> b.    *Whether Defendant's reasons for taking actions against*
>       *Plaintiff were pretext*

Defendant also argues -- and the court agrees -- that even if Plaintiff

could establish a prima facie case of adverse actions and/or termination, Defendant

has proffered a legitimate, non-discriminatory reason for its actions and that Plaintiff cannot establish is pretext for discrimination. Specifically, the evidence presented establishes that the reason Defendant took disciplinary actions against Plaintiff (up to and including termination) was due to Plaintiff's violations of the IAM Rules of Conduct. Specifically, the evidence presented establishes that Plaintiff was disciplined and eventually terminated because (1) Freeman received numerous complaints from customers and Plaintiff's co-workers about Plaintiff's performance and attitude, Doc. No. 49-1, Freeman Decl. ¶ 8; (2) Plaintiff falsified her time spent on activities, and otherwise took unacceptably long breaks, Doc. No. 49-7, Forsyth Decl. ¶ 3; (3) Freeman believed Plaintiff had violated procedures during two customer calls in which Plaintiff was described in one call as the "rudest person [she had] talked to," "obnoxious," and "condescending," and in the other call as "most uncooperative person I've ever met and talked with," Doc. No. 49-1, Freeman Decl. ¶¶ 15, 20; and (4) Plaintiff was involved in an incident while traveling on pass privileges in which she attempted to physically stop a UAL agent from closing the door of a plane. Doc. No. 49-8, Def.'s Ex. 6; Doc. No. 49-7, Forsyth Decl. ¶ 6.

Again, Plaintiff has not carried her burden on summary judgment. She provides no evidence, direct or indirect, of pretext. That is, she has offered no

admissible evidence that discrimination more likely motivated Defendant or that

Defendant's explanation is unworthy of credence.[5]  *Vasquez*, 349 F.3d at 641.

Accordingly, the court GRANTS Defendant's Motion for Summary

Judgment on Plaintiff's claims for adverse actions and/or termination on the basis

---

[5]  Plaintiff attached to her Complaint a Hawaii State Department of Labor and Industrial Relations ("DLIR") decision reversing the Unemployment Insurance Division's determination that Plaintiff was discharged for misconduct.  Compl. Ex. 5.  As a result of this decision, Plaintiff was entitled to unemployment benefits.  Even if admissible, the decision provides Plaintiff no relief.

Plaintiff does not provide any arguments regarding this exhibit, but to the extent Plaintiff contends that this document establishes a genuine issue of material fact that the reasons for her termination were pretext, the court disagrees.  This decision establishes only that Defendant did not carry its burden before the DLIR of proving that Plaintiff was discharged for "misconduct" as required by Hawaii Revised Statutes ("HRS") § 383-30(3) to disqualify Plaintiff from unemployment benefits.  Section 12-5-51(c) of the Hawaii Administrative Rules defines "misconduct" as "actions which show a wilful or wanton disregard" of the employer's interest, and does not include "[m]ere inefficiency, unsatisfactory conduct because of inability or incapacity, isolated instances of ordinary negligence or inadvertence, or good-faith errors in judgment or discretion."  As this definition shows, an employer may have valid reasons to terminate an employee even where the employee's conduct does not rise to the level of "misconduct" under unemployment compensation law.  Further, whether Defendant could establish that Plaintiff was terminated for misconduct is a wholly different inquiry than the one here of whether Defendant discriminated against Plaintiff on the basis of race and/or color.  The unemployment decision makes no findings of discrimination and therefore does not establish a genuine issue of material fact in support of Plaintiff's claim.  *See also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (holding that the findings in a Hawaii state agency decision that the plaintiff was not terminated for misconduct "do not show that Aloha discriminated").  Indeed, as described above, regardless of precisely what occurred during the phone calls in which customers complained about Plaintiff or while Plaintiff was traveling on travel privileges, Plaintiff does not dispute that Defendant legitimately believed that Plaintiff had acted inappropriately on her customer calls and while traveling on travel privileges.  Doc. No. 49-21, Def.'s Ex. 15  at 120, 122, 124; *see also Villiarimo*, 281 F.3d at 1063 (explaining that courts "only require that the employer honestly believed its reason for its action, even if its reason is foolish or trivial or even baseless" (quotations omitted)).  Unlike the DLIR case, which focused on Plaintiff's conduct as an employee, this Title VII case focuses on whether Plaintiff was singled out and treated less favorably than others on account of a protected status, such as race.

of race and/or color.

**B.     Plaintiff's Hostile Work Environment Claim**

Defendant argues that summary judgment must be granted on Plaintiff's claim for hostile work environment (to the extent she asserts one) because she failed to exhaust this claim and has otherwise failed to establish a prima facie claim.  Based on the following, the court agrees.

As an initial matter, Plaintiff did not include any claim for hostile work environment in her discrimination charge before the EEOC and HCRC. Although the discrimination charge states that she was subjected to "disciplinary actions" and "unequal terms and conditions of employment," the discrimination charge describes discrete acts that on their own do not suggest a claim for hostile work environment.  *See* Doc. No. 49-19, Def.'s Ex. 13.  Accordingly, Plaintiff has not exhausted this claim.  *See Swinnie v. Geren*, 379 Fed. Appx. 665, 667 (9th Cir. 2010) (affirming dismissal of claim where the "complaint alleged discrete acts of discrimination but would not have put the EEO investigator on notice of a pattern of conduct 'sufficiently severe or pervasive' so as to create an 'abusive work environment'"); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (holding that allegations of discrete acts in "an EEOC charge to support a claim of disparate treatment, will not also support a subsequent, uncharged claim

of hostile work environment 'unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge'").

Further, even if Plaintiff did exhaust this claim, Plaintiff has not established a genuine issue of material fact in support of it. A hostile work environment claim based on race requires that a plaintiff show that: (1) she was subjected to verbal or physical conduct of a racial nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the employee's conditions of employment and create an abusive work environment. *Vasquez*, 349 F.3d at 642; *Galdamez v. Potter*, 415 F.3d 1015, 1023 (9th Cir. 2005). There is simply no evidence that Plaintiff was subjected to any conduct of a racial nature, much less that any of the alleged conduct was because of her race. Further, there is no evidence that any harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment to create an abusive work environment. Rather, the evidence establishes that Freeman raised with Plaintiff performance problems he legitimately believed existed in his role as his supervisor.

Accordingly, the court GRANTS Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim.

## V.  **CONCLUSION**

For the reasons stated above, the court GRANTS Defendant's Motion

for Summary Judgment.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 23, 2011.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Outlaw v. United Airlines, Inc.*, Civ. No. 09-00620 JMS/BMK; Order Granting Defendant's
Motion for Summary Judgment